NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PREMIO FOODS, INC., | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 11-cv-4968 (DMC-JAD) |
| PURDUE FARMS, INC., FPP FAMILY INVESTMENTS, INC., COLEMAN NATURAL FOODS, INC., JOHN DOES 1-10, and XYZ CORPORATIONS 1-0, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the Motion of Defendants Purdue Farms, Inc. ("Purdue"), FPP Family Investments, Inc. ("FPP"), and Coleman Natural Foods, Inc. ("Coleman") (collectively, "Defendants") to Dismiss the Complaint of Plaintiff Premio Foods, Inc. ("Premio" or "Plaintiff") pursuant to FED. R. CIV. P. 12(b)(6). ECF No. 9. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' Motion is **granted in part** and **denied in part**.

I.      **BACKGROUND**[1]

---

[1] The facts in the Background section have been taken from Complaint. On this Motion to Dismiss, the Court will accept the factual allegations in the Complaint as true and construe all facts in Plaintiff's favor.

Premio specializes in sausage production and uses proprietary information and trade secrets to optimize its operation. Compl. ¶¶ 3, 9-11, ECF No. 1. Premio claims that sometime before February 2011, Defendants FPP and two of its corporate subsidiaries, Perdue and Coleman, devised a scheme to misappropriate Plaintiff's trade secrets for use in their own line of sausage products. Compl. ¶ 16. As part of that alleged scheme, Perdue falsely stated that it wanted to form a joint business venture with Premio, with the understanding that such a lie would allow Perdue to gain access to Premio's proprietary information. Compl. ¶ 18. Premio also claims that although Perdue never intended to form a business venture with Premio, it nonetheless did so in February 2011, when Perdue and Premio agreed to be bound by the "substantive elements" of an unsigned Co-Pack Agreement ("CPA"). Compl. ¶¶ 26-29. Premio claims that the parties never formally executed the CPA because they disagreed on "choice of law and dispute resolution mechanisms," but that the parties are bound by all other provisions within the CPA. Compl. ¶ 48.

Under the terms of the CPA, Perdue would supply Premio with raw sausage materials and pay Premio on a per-pound basis to produce finished sausage products. CPA ¶¶ 1, 4, Ex. 2 to Declaration of Christopher Crook ("Crook Dec."), ECF No. 9-2. The CPA states that Premio is an "independent contractor" for Perdue, and specifically disclaims that the parties formed a "partnership, joint venture or similar relationship." CPA ¶ 17.8. The CPA further states that "either party [could] enter into a similar arrangement with any other party during the term of the CPA," but that Perdue and Premio could not terminate their business relationship for one year. CPA ¶¶ 10, 16.1.

In addition to defining the parties' working relationship, the CPA also protected Premio's proprietary sausage production information. Specifically, the CPA states that Premio's product

formulas, recipes, designs and manufacturing processes are confidential and to not to be used by Perdue "for its own account or purposes or for the purposes of any other party." CPA ¶¶ 9.1, 9.2.2. Premio also claims that on March 9, 2011, Perdue signed a Non-Disclosure Agreement ("NDA") that further protected Premio's trade secrets.

Premio asserts that it invested a large sum of money and allocated substantial resources in reliance on Perdue's representations that the parties formed a joint business venture. Compl. ¶ 44. Premio further claims that because of that purported business relationship, and because Premio believed its proprietary information was protected by the CPA and the NDA, it fully shared its trade secrets with Perdue, including Premio's methods of introducing carbon dioxide into sausage products, reducing detrimental bacterial growth within those products, and increasing the shelf life of the finished products, as well as Premio's sausage stuffing, linking, and bone removal techniques. Compl. ¶¶ 49-62. By way of example of how Premio shared this information, on March 9, 2011, Premio gave Perdue an in-depth tour of its facilities. Compl. ¶ 37.

Premio further alleges that throughout the course of Perdue's business relationship with Premio, Perdue was aware that its corporate parent, FPP was in the process of acquiring Coleman, a rival sausage production company. Compl. ¶¶ 63-65. Shortly after that acquisition became final in May 2011, Perdue ended its business relationship with Premio. Compl. ¶ 63. Premio claims that Perdue is now using Premio's proprietary information to produce sausage at Coleman's facilities, in violation of the CPA and the NDA. Compl. ¶¶ 63-69.

In response to this series of events, Premio filed the Complaint on August 26, 2011, asserting eighteen causes of action arising under New Jersey law. The counts can be grouped together roughly as: (1) Premio's claims stemming from Perdue's termination of the parties' business

relationship (Counts Seven, Nine, and Eighteen); (2) Premio's claims stemming from Perdue's misappropriation of trade secrets (Counts One and Eight); (3) Premio's quasi-contract claims (Counds Twelve through Fourteen); (4) Premio's claims stemming from Defendants' alleged scheme to trick Premio into believing Perdue and Premio formed a business relationship (Counts Two through Four, and Count Ten); and (5) Premio's miscellaneous claims (Count Six and Counts Fifteen through Seventeen).

Defendants filed the present Motion on October 27, 2011. Plaintiff filed Opposition on November 7, 2011. ECF No. 13. Defendants filed a Reply on November 14, 2011. On July 17, 2012, the case was reassigned to this Chambers from the Honorable William J. Martini, U.S.D.J. ECF No. 25. The matter is now before this Court.

## II.  STANDARD OF REVIEW

In deciding a motion under Rule 12(b)(6), the district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. To survive a motion to dismiss, the complaint must state a plausible claim. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). Thus, assuming that the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above a speculative level." Bell Atl. Corp., 550 U.S. at 555.

### III.   ANALYSIS

A. Claims Stemming from Purdue's Termination of the Parties' Contractual Business Relationship

In Count Seven, Premio alleges that when Perdue terminated the parties' business relationship in July 2011, it breached an enforceable agreement, as set forth in the unsigned CPA. For this claim to survive dismissal, Premio must show that: (1) the parties entered into an agreement, (2) Premio satisfied the terms of the agreement, (3) Perdue failed to satisfy at least one term of the agreement, and (4) the breach caused Premio to suffer a loss. Cargill Global Trading v. Applied Development Co., 706 F. Supp. 2d 563, 578 (D.N.J. 2010).

Premio has sufficiently stated a cause of action for breach of contract. Premio formed a collaborative business arrangement with Perdue when the parties agreed to be bound by the substantive terms of the CPA in February 2011. Premio met its obligations under that arrangement, and because Premio believed the unsigned CPA's substantive terms governed the parties' working relationship, it invested substantial resources and shared confidential information to develop that business relationship, which was to its detriment when Perdue terminated the relationship in July 2011. These facts support Premio's claim that Perdue breached the substantive provisions of the CPA. See Tangible Value, LLC v. Town Sports Int'l Holdings, Inc., No. 10-1453, 2011 WL 773218 at *4 (D.N.J. Feb. 28, 2011) ("[U]nder New Jersey law, parties may bind themselves to an informal agreement even though they contemplate the later execution of a formal agreement.").

Defendants nonetheless argue that Count Seven should be dismissed because the unsigned CPA is a contract for a sale of goods of over $500, and therefore, it is an unenforceable agreement pursuant to New Jersey's Statute of Frauds, N.J.S.A. § 12A:2-201. While the terms of the CPA

indicate that Premio would sell Perdue goods, there are also other important non-sales provisions, such as the protection of proprietary information provisions. The CPA therefore appears to be a mixed contract, leaving the Court presently unable to make a determination that the CPA is a contract for the sale of goods. See Tangible Value, 2011 WL 773218 at *4 (holding dismissal based on the Statute of Frauds inappropriate where the court was unable to discern whether the contract was one for goods or on one for services or whether, if mixed, which predominated) (citing Morales v. Santiago, 526 A.2d 266 (N.J. Super. Ct. App. Div. 1987)). Defendants' Motion to Dismiss Count Seven will therefore be denied.

Consequently, because Premio has stated a claim against Perdue for breach of the CPA, Defendants' Motion to Dismiss Count Nine is also denied. "[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing" which imposes a duty on Perdue to refrain from actions that would injure Premio's right to receive the fruits of the CPA. Sons of Thunder, Inc. v. Borden, Inc., 690 A.2d 575, 587 (1997). See also Coastal Group, Inc. v. Westholme Partners, No. 94-3010, 1996 WL 33545605 at *7 (D.N.J. Oct. 3, 1996) ("because this court will deny defendants' motion to dismiss [plaintiff's breach of contract claim], it correspondingly must deny defendants' motion with respect to [plaintiff's] count alleging violation of the breach of the implied covenant of good faith and fair dealing."). Accordingly, Plaintiff has stated a cause of action for breach of the duty of good faith and fair dealing.

Although dismissal of Counts Seven and Nine is inappropriate at this time, dismissal of Count Eighteen, in which Premio alleges that Perdue wrongfully abandoned the parties' joint venture, is proper. The substantive terms of the CPA - which Premio claims governs the parties' relationship - specifically disclaim that the parties formed a "joint venture or similar relationship."

A joint venture is relationship that can only be formed through a contract. See Wittner v. Metzger, 178 A.2d 671, 674-75 (N.J. Super. Ct. App. Div. 1962) ("The sine qua non of joint venture is a contract purposefully entered into by the parties. The joint venture is not a status created or imposed by law but is a relationship voluntarily assumed and arising wholly ex contractu, express or implied."). Therefore, because the contract at issue specifically disclaims that the parties formed a joint venture, as a matter of law there is no joint venture for Perdue to abandon.

B.   Premio's Claims Stemming for Perdue's Misappropriation of Trade Secrets

Count One (misappropriation of trade secrets) and Eight (breach of the NDA) are both rooted in Premio's claim that Perdue misappropriated its proprietary sausage production information. Premio alleges facts showing that it gave Perdue full access to its proprietary sausage making information as evidenced by the March 2011 tour of its facility, and that it took precautions to protect this information through both the unsigned CPA and the NDA that Perdue allegedly signed. Premio further claims that Perdue, Coleman, and FPP are now using this protected information in their present sausage production operation, in breach of those agreements.

On these facts, Premio has sufficiently alleged: (1) the existence of a trade secret, (2) communicated in confidence, (3) disclosed in breach of that confidence, (4) acquired by a competitor with knowledge of the breach of confidence, (5) used by the competitor to the detriment of the plaintiff, and (6) that plaintiff took precautions to maintain the secrecy of the trade secret. Rohm and Hass Co. v. Adco Chemical Co., 689 F.2d 424, 429-30 (3d Cir. 1982). Further, assuming the facts alleged by Premio are true, Perdue's actions also violated the terms of the NDA that it signed. Accordingly, Defendants' Motion to Dismiss Counts One and Eight is denied.

C.     Premio's Quasi-Contract Claims

In Count Twelve, Plaintiff asserts a cause of action for quantum meruit against Purdue. The elements for a quantum meruit claim are: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) a showing of the reasonable value of the services. Starkey, Kelly, Blaney & White v. Estate of Nicolaysen, 796 A.2d 238, 242-43 (N.J. 2002). In Count Thirteen, Plaintiff asserts a cause of action for unjust enrichment, the elements of which are: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." Wanaque Borough Sewerage Auth. v. West Milford, 677 A.2d 747, 753 (N.J. 1996). In Count Fourteen, Plaintiff alleges a cause of action for promissory estoppel, which requires a showing of "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington, 944 A.2d 1, 19 (N.J. 2008).

According to the Complaint, Premio provided proprietary information to Perdue, and invested substantial resources in reliance on Perdue's assurances that the parties formed a business venture in February 2011. Premio has also alleged sufficient facts to show that Premio's reliance on those promises was reasonable based on the subsequent four months of business dealings between the parties, that it relied on Perdue's promises to its detriment by investing substantial resources in an improperly terminated business relationship, and that Defendants are presently using Premio's misappropriated proprietary information without compensating Premio. Premio has therefore set forth sufficient facts in support of its quasi-contractual theories, and the Court will deny Defendants' Motion to Dismiss Counts Twelve, Thirteen, and Fourteen.

D.      Premio's Claims Stemming from Defendants' Plan to Trick Premio Into Believing Perdue and Premio Formed a Business Relationship

In Count Two, Premio alleges a cause of action for civil conspiracy, claiming that parent corporation FPP conspired with Perdue and Coleman, two of its subsidiaries, to misappropriate Premio's proprietary information.  For Count Two to survive dismissal, Premio must allege facts showing "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, [through] an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Morgan v. Union County Bd. of Chosen Freeholders, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div. 1993).

As an initial matter, recent case law suggests that a parent corporation and its subsidiaries are "legally incapable of forming a conspiracy with one another." U.S. v. Chubb Institute, No. 06-3562, 2010 WL 1076228 at *10 (D.N.J. Mar. 22, 2010) (citing Fogie v. THORN Ams., Inc., 190 F.3d 889 (8th Cir.1999)).  Dismissal of Premio's civil conspiracy claim on the basis of legal impossibility therefore may well be proper, even though Coleman was not FPP's subsidiary until May of 2011, which was months after the conspiracy allegedly began.

Even assuming Defendants are legally capable of forming a conspiracy, Premio still must allege facts beyond "conclusory allegations of concerted action" for Count Two to survive 12(b)(6) dismissal.  Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998); see also Lynn v. Christner, 184 F. App'x 180, 185 (3d Cir. 2006) (conspiracy claim adequately pled if facts alleged "adequately state[s] the conduct, time, place, and persons responsible.").  Premio has not done this.  Absent from its pleading are any indications of the time, place, or persons responsible for hatching Defendants' alleged conspiracy.  Accordingly, Defendants' Motion to Dismiss Count Two will be granted.

Although pled as two separate claims, Count Three (common law fraud) and Count Five (unfair competition) both allege that Defendants fraudulently told Premio that they wanted to enter into a business relationship in order to gain access to Premio's proprietary information. See Commerce Bancorp, Inc. v. BK Intern. Ins. Brokers, Ltd., 490 F. Supp. 2d 556, 563 (D.N.J. 2008) (applying elements of common law fraud to plaintiff's intentional misrepresentation claim). As both counts sound in fraud, they are subject to FED. R. CIV. P. 9(b)'s heightened pleading standard. Thus, Premio must sufficiently allege the elements of a fraud claim, which are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). Further, Premio must show "either plead the date, time, and place of the alleged fraud, or inject precision into the allegations by some alternative means." DiMare v. MetLife Ins. Co., 369 F. App'x 324, 329 (3d Cir. 2010) (internal citations omitted).

Premio has not pled information as to the identity of the individuals who made and received the alleged misrepresentations. Premio's pleadings therefore fail to meet Rule 9(b)'s heightened standard. See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Accordingly, Counts Three and Five will be dismissed.

Dismissal of Count Four is also appropriate, as a claim for negligent misrepresentation is only properly asserted in the context of "tort claims by innocent third parties who suffered purely economic losses at the hands of negligent defendants with whom no direct relationship existed." Commerce Bancorp, Inc., 490 F.Supp.2d at 563-64 (D.N.J. 2008). Here, Premio's claims are rooted in Perdue's alleged breaches of their direct business relationship. Accordingly, Count Four will be

dismissed.

Count Ten, for tortious interference with contractual relations, and Eleven, for tortious interference with prospective economic advantage, have the same prima facie elements: (1) defendant's actual interference [with a contractual right or with a prospective economic advantage]; (2) that is malicious in nature. Raymond v. Cregar, 185 A.2d 856, 860 (1962). "Malice," in this context, means the intentional doing of a wrongful act without justification or excuse. Rainier's Dairies v. Raritan Valley Farms Inc., 117 A.2d 889, 895 (N.J. 1955); see also Glasofer Motors v. Osterlund, Inc., 433 A.2d 780 (N.J. Super. Ct. App. Div. 1981) (alleged interference must be unreasonable)

In this case, Premio has failed to plead sufficient facts suggesting that FPP and Coleman acted in a legally or ethically improper way, particularly in light of the fact that the unsigned CPA explicitly provided that Perdue and Premio's business relationship was non-exclusive. Premio has thus failed to plead any facts suggesting that FPP and Coleman acted "maliciously." Accordingly, Counts Ten and Eleven will be dismissed.

E.   Premio's Miscellaneous Claims

Count Six sets forth a cause of action for conversion, which requires Premio to plead facts showing that Defendants are wrongfully exercising "dominion or control over [Premio's tangible, rather than the intangible, property] . . . without authorization and to the exclusion of the owner's rights in that property." Chicago Title Ins. Co. v. Ellis, 978 A.2d 281, 288 (N.J. Super. Ct. App. Div. 2009); Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 210 F.Supp.2d 552, 568 (D.N.J. 2002). In this case, Premio alleges that Defendants have misappropriated Premio's intangible trade

secrets and applied them to Perdue's business operation.  Therefore, because Premio does not allege that Defendants are in possession of any of Premio's tangible property, Count Six will be dismissed.

Count Fifteen sets forth a cause of action for trespass to personal property.  Premio's claim fails, however, because that claim requires that the entry onto another's real or personal property be unauthorized.  State v. Wouters, 177 A.2d 299, 301-02 (N.J. Super. Ct. App. Div. 1962).  Premio does not allege any facts suggesting that Perdue's entry onto Premio's property was unauthorized, nor does Premio so argue in its Opposition Brief.  Count Fifteen will therefore be dismissed.

Dismissal of Premio's prima facie tort claim in Count Sixteen is also appropriate, because "the availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action." Dixon v. CEC Entm't, Inc., No. L-4087-04, 2008 WL 2986422, at *10 (N.J. Super. App. Div. Aug. 6, 2008).  It is not "a catch-all alternative for every cause of action which cannot stand on its legs." Cosmas v. Am. Express Centurion Bank, 757 F. Supp. 2d 489, 493 (D.N.J. 2010).  The prima facie tort should therefore not be invoked "when essential elements of an established and relevant cause of action are missing." Taylor v. Metzger, 706 A.2d 685, 701 (N.J. 1998).  In this case, if the willful conduct allegedly committed by Defendants is true, that behavior is encompassed by other traditional tort actions.  Count Sixteen will therefore be dismissed.

Finally, an accounting, as demanded in Count Seventeen, may only be compelled if the following three elements are shown: (1) the existence of a fiduciary or a trust relation; (2) the complicated nature or character of the account; and (3) the need for discovery.  Transtech Indus., Inc. v. Certain Underwriters at Lloyds London, No. L-10827-95, 2009 WL 2146496, at *2 (N.J. Super.

Ct. App. Div. July 21, 2009).  Premio has pled no facts suggesting that there is a fiduciary relationship between it and FPP and Coleman.  Furthermore, the unsigned CPA, which Premio asserts governs its business relationship with Perdue, specifically disclaims that the parties formed a "partnership, joint venture or similar relationship."  Premio has therefore also failed to allege the existence of a trust or fiduciary relationship with Perdue, and Count Seventeen will be dismissed.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint is **granted** as to Counts Two, Three, Four, Five, Six, Ten, Eleven, Fifteen, Sixteen, Seventeen and Eighteen without prejudice, and **denied** as to the remaining Counts.  An appropriate Order accompanies this Opinion.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:       July   30  , 2012
Orig.:      Clerk
cc:         All Counsel of Record
            Hon. Joseph A. Dickson, U.S.M.J.
            File